Helen D. KELLEY and John E. Kelley,
Plaintiffs-Appellees,

v.

UNITED STATES of America,
Defendant-Appellant,

Ruth Semko, Defendant.

No. 7, Docket 76–6159.

United States Court of Appeals,
Second Circuit.

Argued Sept. 16, 1977.

Decided Jan. 3, 1978.

---

Morton Hollander, Washington, D. C. (Rex E. Lee, Asst. Atty. Gen., Washington, D. C., James M. Sullivan, Jr., U. S. Atty., Syracuse, N. Y., William Kanter and Eloise E. Davies, Attys., Dept. of Justice, Washington, D. C., of counsel), for defendant-appellant.

Donald W. Kramer, Binghamton, N. Y. (Kramer, Wales & McAvoy, Binghamton, N. Y., of counsel), for plaintiffs-appellees.

Before MANSFIELD and TIMBERS, Circuit Judges and DOOLING, District Judge.*

DOOLING, District Judge:

The United States is, under 28 U.S.C. § 2674, liable for tort claims in the same manner and extent as a private individual under like circumstances. No action may be instituted upon such a tort claim until it has been presented to the interested federal agency and has been finally denied (28 U.S.C. § 2675), and the claim must be presented in writing to the appropriate federal agency within two years after the claim accrues (28 U.S.C. § 2401(b)). Failure to act on the claim for six months may at the claimant's option be treated as a final denial. 28 U.S.C. § 2675.

Where the tortious injury complained of has resulted from a Government employee's operation of a motor vehicle "was acting within the scope of his . . . employment," but suit is commenced not against the Government but against the Government employee and is commenced in a state court, then 28 U.S.C. § 2679(d) provides that upon the Attorney General's certifying that the employee was acting within the scope of his employment at the time of the incident, the case must be removed to the federal district court

". . . and the proceedings deemed a tort action brought against the United States under the provisions of this title and all references thereto."

Section 2679(d) provides, as to cases removed upon the Attorney General's certificate, that

"Should a United States district court determine on a hearing on a motion to remand held before a trial on the merits that the case so removed is one in which a remedy by suit within the meaning of subsection (b) of this section is not available against the United States, the case shall be remanded to the State court." **

This appeal presents the question whether in such a removed tort action the plaintiffs, who originally sued a federal employee in the state court, must, nevertheless, after the removal, prove that before suing the employee they presented the claim to the Government as a claim against it in compliance with Section 2675(a) within the two years prescribed by Section 2401(b).

On November 8, 1972, plaintiff Helen Kelley was struck by a motor vehicle owned and operated by Francis A. Hunt, an employee of the Department of Agriculture.

---

* Of the Eastern District of New York, sitting by designation.

** Subsection (b) of Section 2679 provides:
"The remedy against the United States provided by sections 1346(b) and 2672 of this title for injury or loss of property or personal injury or death, resulting from the operation by any employee of the Government of any motor vehicle while acting within the scope of his office or employment, shall hereafter be exclusive of any other civil action or proceeding by reason of the same subject matter against the employee or his estate whose act or omission gave rise to the claim."

In May 1973 Mrs. Kelley and her husband sued Hunt and Ruth Semko in Broome County Supreme Court, alleging that the Semko vehicle was so negligently driven that it nearly collided with Hunt's car, and that Hunt's vehicle was driven so negligently that it went out of control and struck plaintiff. The pleading did not mention Hunt's employment. The Travelers Insurance Company, Hunt's insurer, undertook his defense and designated counsel for him. Hunt answered in July 1973; he denied the main allegations of the complaint and cross-claimed against Semko for an apportionment of any damages awarded the plaintiffs, but he did not refer to his federal employment, or plead the defense afforded by Section 2679(b) to federal drivers whose accidents occur when they are acting within the scope of their employment.

Hunt had earlier reported the accident, orally at least, to his circuit supervisor, and on January 19, 1973, a Special Agent of the Office of the Inspector General of the Department of Agriculture, David Ricks, interviewed plaintiff Helen Kelley, obtaining from her a statement of the details of the accident, a copy of a report on the surgery performed on Mrs. Kelley, and a copy of the hospital bill, which amounted to $3,773. There is no reason to suppose that Ricks did not identify himself.

Hunt did not, however, when he was sued in May 1973, deliver the process served upon him or an attested true copy to his immediate superior or to whomever his head of department had designated to receive such papers, as 29 U.S.C. § 2679(c) and 28 C.F.R. § 15.1 require, and, in consequence, none of the papers in the lawsuit was sent to the United States Attorney, the Attorney General, or the head of Hunt's employing agency, as Section 2679(c) and Section 15.1 contemplate.

On March 5, 1974, during the taking of Hunt's deposition, his employment was put on the record explicitly, and Hunt testified that he had been working on the day of the accident in Friendsville, Pennsylvania, and was on his way home from that work when the accident happened. Still nothing was done to bring the Government into the case.

In the first days of December 1974, a little over two years after the accident, counsel for Hunt communicated with General Counsel's Office of the Department of Agriculture, and, evidently, sent copies of the pleadings to them and to the United States Attorney. Hunt's counsel took the position, in writing to the United States Attorney, that at the time of the accident Hunt was operating his own car with the permission of the federal government while acting within the scope of his employment; counsel expressed the opinion that Section 2679(b) applied to the Kelley case; he noted that Section 2679(c) requires the Attorney General to defend any civil action brought in any court against a Government employee for personal injury resulting from his operation of a motor vehicle while acting within the scope of his Government employment.

On January 29, 1975, the United States Attorney (for the Attorney General) certified, pursuant to 28 U.S.C. § 2679(d), that Hunt was an employee of the United States and had been acting within the scope of his employment at the time of the accident. On February 6, 1975, the Government removed the case to the federal court. On May 1, 1975, plaintiffs filed a claim based on the accident with the Department of Agriculture. On May 27, 1975, the Government moved for an order substituting the United States as defendant in place of Hunt (28 U.S.C. § 2679(b), (d)) and dismissing the action because plaintiffs had failed to file an administrative claim before suing (28 U.S.C. § 2675).

Judge MacMahon (of the Southern District of New York, sitting by designation) granted the motion to substitute the United States but denied the motion to dismiss. He held inapplicable N.Y.C.P.L.R. § 214, sd. 5, requiring an action for personal injuries to be commenced within three years after the cause of action accrued, since 28 U.S.C. § 2675 requires an administrative claim to be filed before commencing a tort action against the United States, and 28 U.S.C. § 2401(b) bars such an action unless the

claim is presented against the United States within two years after the claim accrues and the action is commenced within six months after the mailing of a final denial of the claim. However, noting the statement in the legislative history that the bills which in 1966 amended Sections 2675 and 2401 to impose the administrative filing requirement had "the common purpose of providing for more fair and equitable treatment of private individuals and claimants when they deal with the Government or are involved in litigation with their Government,"[1] Judge MacMahon observed that plaintiffs were not at fault, had pursued their suit diligently, and had not been advised that the Government was the proper defendant, and that, on the Government side, since it was Hunt's duty to notify his superior of the suit, and the Government's duty to investigate and promptly certify Hunt's status if he was acting within the scope of his employment, delay could not rightly operate to advantage the Government and prejudice the plaintiffs. The Court concluded that the Government could not lull plaintiffs into a false sense of security by waiting until plaintiffs' time to file an administrative claim had expired and thereupon move to be substituted and to dismiss.

The case exemplifies a sub-class of Federal Tort Claims Act cases, a sub-class which draws to it no reprobation and invites no special rigor of treatment. It is, simply, one of the not uncommon cases in which a driver of a motor vehicle who is a federal employee is sued individually because the plaintiff did not know that defendant was a federal employee, or did not understand that the employee was on federal business at the time of the accident. The instances in this sub-class of cases are characterized by innocent ignorance or ingenuous blunder. There is nothing here to be discouraged or visited with disaster.

The Government argues that the United States may be sued only as it consents to be sued, that it has consented to be sued only if a claim is first presented to the appropriate department (Section 2675), is presented within two years after "such claim accrues," and is sued upon within six months after final denial (Section 2401(b)); unless then, the action shows compliance with the statute, sovereign immunity is not waived and the court is without jurisdiction to proceed. The Government, it is pointed out, is not subject to estoppel based on acts or omissions of its agents. The Government contends finally that a number of cases directly in point have reached a result opposite to that reached by the district court in this case.

No questions of immunity or jurisdiction are genuinely involved. The Congress in setting up the tort claims procedure, now embodied in Chapter 171 of Title 28, waived the sovereign immunity of the United States except for those classes of cases listed in Section 2680. Of the Federal Tort Claims Act, enacted in 1946 (60 Stat. 842), it has been said that "It marks the culmination of a long effort to mitigate unjust consequences of sovereign immunity from suit." Feres v. United States, 1950, 340 U.S. 135, 139, 71 S.Ct. 153, 156, 95 L.Ed. 152. That the Act ends the immunity defense does not furnish a ground for niggardly interpretation of the act.[2] It was said in Indian Towing Co. v. United States, 1955, 350 U.S. 61, 68–69, 76 S.Ct. 122, 126, 100 L.Ed. 48:

"The broad and just purpose which the statute was designed to effect was to compensate the victims of negligence in the conduct of governmental activities in circumstances like unto those in which a private person would be liable and not to leave just treatment to the caprice and legislative burden of individual private laws. Of course, when dealing with a statute subjecting the Government to liability for potentially great sums of money, this Court must not promote profligacy by careless construction. Neither

1. From Senate Report No. 1327, 89th Cong. 2nd Sess., 2 U.S.Code Cong. and Admin.News, 1966, pp. 2515–2516.

2. See Aetna Casualty & Surety Co. v. United States, 2d Cir. 1948, 170 F.2d 469, 471.

should it as a self-constituted guardian of the Treasury import immunity back into a statute designed to limit it."

The case is, by the very fact of the United States Attorney's certificate, identified as one of the classes of tort cases in which the United States has waived immunity, and Section 1346(b), with Section 2679(b), (d), explicitly confers jurisdiction on the district courts in such federal tort cases.

Before the 1966 amendment of Sections 2401(b), 2672, 2675 and 2679(b), presently to be discussed, the filing of an administrative claim was not a prerequisite to commencing or maintaining a Federal Tort Claims Act action against the United States in the federal court, especially when the demand exceeded $2,500. See *Schlingman v. United States*, S.D.Cal.1963, 229 F.Supp. 454, 455. Under the earlier law Section 2672 empowered the heads of federal agencies to consider and settle only claims for $2,500 or less. While suit could not be commenced until a claim filed under Section 2672 was finally denied, the claimant could withdraw the claim from consideration on fifteen days notice and commence suit. Until the 1966 amendments Section 2401(b) required tort actions against the United States to be commenced within two years after the claim accrued.

After the "Federal Drivers Act" was passed in 1961, adding subsection (b) through (e) to Section 2679, it was held that, where a plaintiff sued a federal driver in the state court within two years after the accident, the suit was timely as a suit against the United States even though the United States did not appear, certify that the driver had been acting within the scope of his employment and remove the suit until more than two years after the accident. *Whistler v. United States*, N.D.Ind. 1966, 252 F.Supp. 913. The court said, referring to state court suits against federal drivers (at 915):

"While the statute has rendered futile such attempts to sue individual employees and to litigate federal tort claims in the state courts, it has not in some mystical way abolished the bringing of such ac-

tions, although this seems to be the Government's position. If this were the effect of § 2679(b), subsection (c) would be meaningless in some of its aspects, and subsection (d) would be wholly meaningless. . . . If the bringing of such an action were ineffective for all purposes, then that action could not be removed as provided in subsection (d) or defended by the Attorney General as provided in subsection (c). . . . From a practical standpoint and from a realistic interpretation of the intention of Congress in its enactment of § 2679(b)–(d), the original suit must also be effective for purposes of determining whether it was brought within the period of the statute of limitations provided by 28 U.S.C. § 2401(b)."

The court pointed out that the plaintiff could not either be certain that his action was one appropriate for Federal Tort Claims Act prosecution or exercise control over the time of the removal of the case to the federal court.

*Henderson v. United States*, 10th Cir. 1970, 429 F.2d 588, similarly held that where a state court suit against a federal driver was commenced within two years after the accident and the United States Attorney certified the case and removed it to the federal court more than two years after the accident, the action was timely as an action against the United States. Said the court (429 F.2d at 590):

"The federal court having found that Price [the driver] was acting within the scope of her employment at the time of the accident, the only cause of action that existed was against the United States. In this situation the United States became a party as a matter of law when the action was filed in the state court, regardless of when it was formally substituted as a party defendant."

See also *Miller v. United States*, D.Minn. 1976, 418 F.Supp. 373, 377 n.2, 378; *Raynaud v. United States*, W.D.Mo.1966, 259 F.Supp. 945, 946; *Jones v. Polishuk*, E.D. Tenn.1966, 252 F.Supp. 752, 754 (the Government a party to suit against employee as a matter of law if employee acting within scope of employment).

There is no ground for concluding that the 1966 amendments altered the method of handling suits commenced in state courts against federal drivers. The 1966 legislation was as broad as the Federal Tort Claims Act. It was enacted to relieve the courts of the great volume of tort cases, and to make it possible to settle claims in excess of $2,500 without the necessity for filing suit against the United States. 1966 U.S.Code Cong. & Admin.News pp. 2516–17. The 1966 changes removed the $2,500 limitation altogether, and added a requirement that the Attorney General approve awards or settlements exceeding $25,000. Section 2675 was amended to provide that "An action shall not be instituted upon a claim against the United States for money damages . . . unless the claimant shall have first presented the claim to the appropriate Federal agency . . . ." Having provided for the filing of administrative claims as a condition precedent to instituting suit against the United States, it was necessary to adjust the statute of limitations provision. Section 2401(b) was accordingly amended to make the two years limitation apply to the filing of the administrative claim rather than to instituting suit.

There was no explicit reference in the 1966 legislative history to the suits commenced in the state court and removed to the federal court on the Attorney General's certificates.[3] Section 2675(a) requires an administrative filing before an action is "*instituted* upon a claim against the United States." It does not in terms apply to an action already instituted and removed and which is, upon removal, "deemed a tort action brought against the United States."

The language of Section 2679(b)–(e) is alive with the implication that the action against the employee will be the action that the Attorney General must defend and that is deemed a suit against the United States. The statute plainly does not mandate dismissal of the action against the employee upon the Attorney General's presenting the statutory certificate but rather mandates defense of the action. The statute does not require that prompt certification and removal of the state court case which would alert the plaintiff to the need for filing an administrative claim, but permits removal at any time before trial. The employee, however, is required to deliver all process to the Attorney General within such time as the Attorney General determines (Section 2679(c)), and the Attorney General's regulations (28 C.F.R. § 15.1) not only require the employee to deliver all process and pleadings served upon him to his immediate superior, or to whomever his department head designates, "forthwith," but also requires that upon receipt of process or pleadings or any prior information regarding the commencement of suit, the employee must immediately advise his superior or the designee by telephone or telegraph; the superior or designee must furnish information and copies of process and pleadings "promptly upon receipt thereof" to the United States Attorney and the Torts Section, Department of Justice, Civil Division. The statute itself requires the employee to furnish copies of process and pleadings promptly not only to the United States Attorney and the Attorney General but also to "the head of his employing Federal agency."[4]

3. Before the 1961 enactment of the Federal Drivers Act the United States Attorneys on a number of occasions sought to remove state court cases against federal drivers to the federal court under 28 U.S.C. § 1442(a)(1) as suits against persons acting under federal officers based on acts "under color of office." The majority rule was that removal was not authorized because driving a motor vehicle was not sufficiently identified with the government employee's official functions. *Goldfarb v. Muller*, D.N.J.1959, 181 F.Supp. 41; *Naas v. Mitchell*, D.Md.1964, 233 F.Supp. 414.

4. It was said in *Brennan v. Fatata*, Oneida Co. 1974, 78 Misc.2d 966 at 967, 359 N.Y.S.2d 91 at 92:

"If the defendants are to obtain the benefits of the Federal preemption of section [2679 of Title 28 of the United States Code], they must follow its provisions by turning their suit papers over to the United States Attorney General [U.S.Code, tit. 28, § 2679, subd. (c)] who will then certify if the defendants were within the scope of Federal employment and the action will be removed to Federal court [U.S.Code, tit. 28, § 2679, subd. (d)]. It is implicit in the statute that if the

The statute can not be thought to contemplate that the defense of the case by the United States will consist in moving to dismiss it because no administrative claim against the United States was filed. That will typically have been the case; few, if any, plaintiffs will have sued the federal driver knowing that the suit might properly have been commenced against the United States. The words of the statute—"The Attorney General shall defend any civil action", the "proceedings deemed a tort action against the United States"—too plainly contemplate the continued defense of the action on the merits.

The 1966 amendments clearly impose a condition precedent to instituting suit directly against the United States, and the "administrative" claim usually—although not always—sets a ceiling on the amount that may be sued for and recovered. But the "administrative" stage does not create a record that measures rights or becomes the record for judicial review. The claim need not be presented until two years after the event, and, when filed, stays suit for only six months. Section 2675(a) itself, by its last sentence, provides that it shall not apply to "such claims as may be asserted under the Federal Rules of Civil Procedure by third party complaint, cross-claim or counterclaim." While the exception may well be limited to claims arising out of the same transaction or occurrence that is the subject matter of the principal action (*cf. United States v. Chatham*, N.D.Ga.1976, 415 F.Supp. 1214), and it has been read with almost perverse narrowness (*Rosario v. American Export-Isbrandtsen Lines, Inc.*, 3rd Cir. 1976, 531 F.2d 1227; *Bernard v. U. S. Lines, Inc.*, 4th Cir. 1973, 475 F.2d 1134, 1136), the exception nonetheless demonstrates that in one common situation the 1966 legislation visualized that no administrative claim need be filed as a condition precedent to obtaining full judicial relief. The exception recognizes a duty to defend in a pending case not different in kind from the duty to defend imposed by Section

2679(c) and (d). And, as noted, Section 2679(c) and 28 C.F.R. § 15.1 make careful provision for securing prompt and complete notice to the Government of any pending suit involving potential federal liability.

That the lawsuit against the employee is, without more, the intended vehicle through which the rights of plaintiff, employee and Government are to be adjudicated appears too from Section 2679(e). Subsection (e) provides that

"The Attorney General may compromise or settle any claim asserted in such civil action or proceeding in the manner provided in section 2677, and with the same effect."

The phrase "such civil action or proceeding" reiterates the phrase used in the first and second sentences of subsection (c) and in the first sentence of subsection (d) of Section 2679. That phrase, when used in subsections (c) and (d), means only the suit commenced against the employee in whatever court it was commenced, provided always that the employee is certified to have been acting within the scope of his employment and no contrary pretrial finding is made. Section 2677 originally authorized the Attorney General "with the approval of the court" to settle "any claim cognizable under Section 1346(b) of this title," but he could do so only "after the commencement of an action thereon." See 28 U.S.C. § 2677 (1964). The 1966 amendments altered Section 2677 in two respects: it deleted the requirement for court approval of settlements, and empowered the Attorney General "or his designee" to make settlements. No change was made in subsection (e) of Section 2679. The implication is that, although the suit against the employee is not literally within Section 2677 because it is not formally an action against the United States, it may be settled in the same manner as if it were.

The legislative history is clear. The Senate Report (No. 736, 87th Cong., 1st Sess.)

defendants do not turn over their suit papers or if the Attorney General does not certify to their being in the scope of Federal employ-

ment, the State action continues against the defendants personally."

on the bill that became Section 2679(b)–(e) quoted the following with approval from the House Report on an earlier bill containing the language which became Section 2679(e) (2 U.S.Code Cong. & Admin.News, 1961, p. 2788):

"Subsection (e) grants the Attorney General the authority to settle cases in the same manner as he now does under section 2677 of title 28. The committee feels that this is a particularly important provision, for there may be cases in which the Attorney General will find it is to the advantage of the United States to settle the matter at the earlier stages of the proceeding. In those instances where the proceeding is commenced in a State court this settlement can be effected before removal to a U. S. district court. This makes possible the elimination of unnecessary delay and difficulty to everyone concerned, for if the case is a proper one for settlement it is only logical to provide authority for settlement without requiring removal to the Federal court."

No identifiable public interest is served by rejecting a plain and straightforward reading of Section 2679(b)–(e) in favor of insistence that a requirement of administrative filing be injected into it. No matter what the date of filing of the suit, such a reading would require an immediate dismissal of all actions against employees except in the rarest of rare cases, the case in which an administrative claim had been filed and the action against the employee was a precautionary filing made to cover the chance that the employee was acting outside the scope of his authority. The Government is not the wiser or better informed for receiving an administrative claim rather than a complaint; it loses no right or power to deal with the claim; in fact the form of the case must focus attention on a point which it might not otherwise have considered contesting; and the suit may alert it to the existence of rights under such insurance as the federal driver may have (*United States v. Government Employees Ins. Co.*, E.D.Va.1976, 409 F.Supp. 986).

To interpret Section 2679(b)–(d) as incorporating the administrative filing requirement of Section 2675(a) runs counter to the dominating purposes of the Federal Tort Claims Act and of Section 2679(b)–(d). The central purpose of the Federal Tort Claims Act was to end the old injustice of the tort immunity, and the purpose of Section 2679(b) was to protect the federal drivers from individual liability and from the necessity of carrying liability insurance. In exactly the most excusable and understandable case—the case of the plaintiff who sues in ignorance of the fact that the defendant was a federal driver operating within the scope of his employment—requiring an administrative filing produces the most unjust refinement of interpretation: the plaintiff must have filed a claim that he did not know he had; his suit must be dismissed unless plaintiff can prove that the Government was wrong in certifying that the federal employee was acting within the scope of his employment.[5] The interpretation puts a premium on plaintiff's establishing what it is the purpose of Section 2679(b)–(d) to prevent, that the employee is liable.

**5.** The certification procedure contains its own complexities. The government employee cannot mandamus the Attorney General to issue a certificate. *Seiden v. United States*, 6th Cir. 1976, 537 F.2d 867; *Lemley v. Mitchell*, D.D.C. 1969, 304 F.Supp. 1271. The Attorney General's decision has been held to be reviewable under Administrative Procedure Act standards (5 U.S.C. § 706(A)) on the administrative record. *Proietti v. Levi*, 9th Cir. 1976, 530 F.2d 836. Given the statutory purpose reflected in the language of Section 2679(b), the remand sentence in Section 2679(d) has been held to authorize remand only when the court has found that the employee was not acting within the scope of his employment. *Thomason v. Sanchez*, 3rd Cir. 1976, 539 F.2d 955, 957–958; *Carr v. United States*, 4th Cir. 1970, 422 F.2d 1007, 1010; *Van Houten v. Ralls*, 9th Cir. 1969, 411 F.2d 940; *Noga v. United States*, 9th Cir. 1969, 411 F.2d 943; *Vantrease v. United States*, 6th Cir. 1968, 400 F.2d 853, 855; cf. *Perez v. United States*, S.D.N.Y.1963, 218 F.Supp. 571, 576; *McCrary v. United States*, E.D.Tenn.1964, 235 F.Supp. 33. On that isolated issue trial and appellate court can differ. *Levin v. Taylor*, 1972, 150 U.S.App.D.C. 261, 464 F.2d 770.

Nothing in either enactment authorizes the view that in this context the Congress was jealous to preserve a shabby remnant of sovereign immunity, or designed to confront litigants with a half-concealed hurdle to a judicial hearing against the real party in interest on the merits of their claims.

The cases relied on by the United States as being directly relevant did not arise on similar facts. In *Baker v. United States*, D.Md.1972, 341 F.Supp. 494, aff'd 4th Cir. 1972 in unpublished memorandum, the state court suit was commenced against the employee more than two but less than three years after the accident and it was barred by former Section 2401(b) but not by the state statute of limitations. *Kangas v. United States*, D.Minn.1975, unreported, 2–75 Civ. 34, involved a state court suit commenced against the employee "on or about" the second anniversary of the accident. In *Elter v. United States*, W.D.Pa. 1974, unreported, Civil No. 74–526, the state court action against the employee was started nearly four years after the accident. In *Grix v. United States*, E.D.Mich.1975, unreported, Civil No. 74–72550, the suit was against the United States in the first instance, apparently; no claim was filed under Section 2675. In *Baker* neither the plaintiffs nor the government employee understood that the employee was considered in law to be acting in the scope of his employment at the time in question. Said the court, "That result in the instant case seems unfair  .  .  ." (341 F.Supp. at 496). In *Kangas* the plaintiff was allegedly misled by the mistaken legal advice given to him by a postal inspector. In *Elter* the court held irrelevant the plaintiff's alleged ignorance that the defendant was a government employee acting within the scope of her employment. In *Grix* the court held that plaintiff's ignorance that the operator of the other motor vehicle in the accident was a Government employee did not excuse delay or omission to file an administrative claim.

These and other cases, conspicuously, *Meeker v. United States*, 8th Cir. 1970, 435 F.2d 1219, simply reject the contention that suits commenced as suits against Government employees are not within Section 2675's requirement that a claim first be filed with the interested federal agency. See, *e. g., Driggers v. United States*, D.S.C. 1970, 309 F.Supp. 1377, 1379; *Smith v. United States*, W.D.Tenn.1971, 328 F.Supp. 1224. The argument has been that Section 2679(b) through (e) invoke all of the provisions of the Federal Tort Claims Act, and, particularly in light of the 1966 amendments to Section 2675 and 2679(b), must be taken to incorporate the requirement that the administrative filing precede suit. But the argument is supported neither by the language nor the purpose of the 1961 amendments to Section 2679, nor by the language or purpose of the 1966 amendments. The interpretation adopted serves no articulable policy interest of the Government and creates a continuing hazard of random injustices in cases of evident right.

It has been stated that the inclusion in Section 2679(b) of a reference to Section 2672, and the 1966 deletion from the phrase "remedy by suit" in Section 2679(b) of the words "by suit" signified that, even in the case where the individual employee is sued, plaintiff must first file an administrative claim (*Driggers v. United States, supra*, 309 F.Supp. at 1379), and the statement is indicated to be supported by the Senate Report on the bill that became law. But the language cited simply states the language changes being made without particular reference to cases commenced against employees individually (2 U.S.Code Cong. & Admin.News, 1966, pp. 2521–2522). The inclusion of a reference to Section 2672 in Section 2679(b) simply expresses the intention that the claimant has no remedy against the driver if the driver was acting within the scope of his employment, whether the claimant proceeds by suit or settlement. But *Meeker v. United States, supra*, 435 F.2d at 1222, cited *Driggers* with approval and added that, independently of the reason for the result given in *Driggers*, Section 2679 by its own terms requires the same result. The court reasoned that subdivision (d) of Section 2679 effectuated the exclusive remedy purpose of subdivision (b) of

the section by providing that upon the certification and removal of the suit against the employee to the federal court, the proceedings shall be "deemed a tort action brought against the United States under the provisions of this title and all references thereto." Again, the language relied on does not support the conclusion. It is far truer to the language to read it as implying that the removed case is to continue to judgment on the merits as a tort case against the United States subject to only one condition: that it is not found on pretrial motion that the employee was acting beyond the scope of his employment (*Carr v. United States*, 4th Cir. 1970, 422 F.2d 1007, 1010), in which event the case is remanded. Cases have held, too, that the commencement of an action against the employee cannot be treated as the equivalent of filing a claim against the United States. See *Best Bearings Co. v. United States*, 7th Cir. 1972, 463 F.2d 1177, 1179; *Meeker v. United States, supra*, 435 F.2d at 1221; *Smith v. United States, supra*, 328 F.Supp. at 1226. But even if that were requisite in a case started against the federal employee in the state court, no persuasive reason for not considering the service of the complaint to be an adequate claim-making appears: Section 2679(e) and 28 C.F.R. § 15.1 assure the prompt presentation of the process and pleadings to appropriate officers of the Government, and if there is, as here, an occasional failure of transmission, it is not apparent that the consequence should be visited on the plaintiff. In this case plaintiffs sued well within the two years allowed for presenting claims, and the Government should have had prompt and complete notice of the claim. The prompt investigation by Ricks indicates that Hunt's early report at least alerted the Government.

But the significant factors are that plaintiffs commenced their action in good season and that the Government issued the scope-of-employment certificate and removed the case. The union of those acts validated the action as one the further proceedings in which were deemed a tort action brought against the United States. It is not necessary to decide in this case whether the two-year claim limitation of Section 2401(b) applies to the case analogically, or whether it is enough that the case was commenced against the employee within the time limited by state law. It was timely on either basis, and the United States was free to certify and remove at any time before trial. Nor is it necessary to determine whether, for purposes of deciding when the claim against the United States accrued, plaintiffs would be entitled to claim a "discovery" date of March 1964, less than two years before they filed an administrative claim, or, indeed, a discovery date when they learned of the certification.

■ The Government points out that the judgment rendered against it (and its co-defendant) directed each to pay the damages awarded with interest at the rate of 6% per annum from July 22, 1976, the date on which judgment was entered. Final judgments against the United States in actions instituted under Section 1346 (which includes Federal Tort Claims Act cases) bear interest, under 28 U.S.C. § 2411(b), at the rate of 4% per annum from the date of judgment until a date not later than thirty days after the approval of any appropriation Act providing for the payment of the judgment. A continuing appropriation, 31 U.S.C. § 724a, provides for the payment of judgments of the class here involved, and a proviso in that section states that when a judgment to which Section 2411(b) applies is payable from the continuing appropriation, "interest shall be paid thereon only when such judgment becomes final after review on appeal . . . by the United States, and then only from the date of the filing of the transcript thereof in the General Accounting Office to the date of the mandate of affirmance." See *United States v. Jacobs*, 5th Cir. 1962, 308 F.2d 906; *United States v. State of Maryland*, 1965, 121 U.S.App.D.C. 258, 259–260, 349 F.2d 693, 694–695; *United States v. Varner*, 5th Cir. 1968, 400 F.2d 369, 372. The judgment must be modified to conform to Section 724a so far as the judgment affects the United States.

Modified to provide that the judgment against the United States bears interest at 4% per annum from the date of filing of the Transcript thereof in the General Accounting Office to the date of the mandate of affirmance and as so modified, affirmed.